Case No. 13-7147, Han Kim et al., Appellants v. Democratic People's Republic of Korea, also known as North Korea and John Doe's 1 from 10. Mr. Perlin for the appellants, Mr. LeBlanc for Enriquez-Carrac. May it please the court. Good morning. Sorry? I said good morning. Good morning, Your Honor. Sorry. May it please the court. Section 1608E requires a Foreign Sovereign Immunities Act plaintiff seeking default against a foreign government to establish this claim or write it to relief by evidence satisfactory to the court. The big questions in this case are what does that standard require? What is the quantum of evidence required to satisfy, to produce evidence satisfactory to the court, and how does one prove it? Given the posture of the case and the discourse it's holding, I think it's important to start by distinguishing among three different, three different ideas we're discussing when we talk about evidence. One is the quantum of evidence. How much, how much evidence do you need? Another separate issue is what are the elements that must be proven? And the elements have nothing to do with the quantum of evidence. The quantum of evidence is the measure by which you've proven the elements. And the third, the third idea is what kind of evidence can you use when you want to prove your case? So we're talking about the quantum of evidence, the elements that must be proven, and the type of evidence that is required. With this in mind, I would say, I'd like to say that the district court committed a number of errors, any one of which would require reversal here. First, the district court applied the wrong standard for default judgment under 1608E, and it required a greater quantum of evidence than is required under the statute. The court misapplied the precedents that it cited. Second, the district court. What standard do you believe the district court used? The district court used the term prima facie case, and a plaintiff must prove a prima facie case. A prima facie case is a term that refers to the elements of a claim. You can have a, you can allege a prima facie case in your complaint, and it has to, your prima facie case under that situation must be sufficient to withstand a motion to dismiss under 12B6. You can also have a, there's also a question of whether you've proven a prima facie case later on in the case, whether for summary judgment or a trial. But a prima facie case is not a quantum of evidence. What the court did was it acknowledged that there is a standard for quantum, the quantum of evidence, and then the court looked to the Price decision, which discusses the elements which must be proven. The Price decision said that to constitute torture under the Torture Victim Protection Act, you have to distinguish between mere police brutality on one hand, and something that's much more severe that would constitute torture on the other hand. Now what Price said was that to be, to be torture, this is something that should warrant universal condemnation. But, but, but, but just help me understand, I just want to make sure I understand your argument. What is the, if it's, if the standard for quantum of evidence is not prima facie, what is exactly your argument about what the standard is supposed to have been? Our, okay, we're, our position is that the district court elicited a few different options for a quantum of evidence. One of which was evidence sufficient to prevail on a motion, on a motion for judgment outstanding a verdict. One of which was a motion to prevail on a motion for summary judgment. One of which was a motion to, to defend, to successfully defend a motion for judgment on a standing verdict. And then the judge, and the court adopted the prima facie case. What we would say is this, is that because we know that there are different, there are different recognized and accepted quantums of evidence in law. You have beyond reasonable doubt, clear and convincing evidence, preponderance of the evidence. There are different recognized and known established measures. Congress, in adopting 1608E, used different terminology. It said evidence satisfactory to the court. Now it wasn't creating a completely subjective standard. It was saying, it was trying to, to quantify the evidence required. And we suggested it was something, it was less than any of the standards that I've listed. This is a default, this is a motion for default judgment. The defendant doesn't appear. Normally, your, your, your allegations in the complaint are accepted as true. Under the Foreign and Sovereign Immunities Act, Congress didn't want to allow plaintiffs to get away with merely pleading a claim, a prima facie case. Pleading a claim against a foreign country. It wanted, it wanted to demand more. But it wasn't a lot more. And, and the courts, we see as it, I mean. Let me, let me ask you a question. I find this discussion here and also in your brief about all the different standards kind of difficult to get my head around. Because, I mean, yeah, there's a lot of different standards, but we have to have a reason for adopting one or the other. And I'm curious about your reaction to some of the suggestions made in the amicus brief. The decisions of the Inter-American Court that the amicus brief cites are all sort of based on the notion that where you have a state sponsor of terrorism that isn't in the court and which itself suppresses evidence and executes witnesses, that it's not possible at this stage to have the kind of direct evidence the district court was insisting on here. Right? That's right. Okay. Do you know of any decisions of the federal courts that adopt that approach? Not, not using the same terminology, but it's not, it's not something that's foreign to the, to the United States courts. Okay, tell me. I think the court amicus will adjust this further, but in this court's decision in Hill, Hill versus Iraq, which was a decision that dealt with the quantum of evidence required to prove damages following a default judgment, the court held that there's a relaxed evidentiary burden on a foreign sovereign immunities plaintiff to prove liability. It didn't say relaxed from what? But it said there's a relaxed evidentiary burden. The court also said, it cited the legislative history, and the court said it is expected that courts will take into account the extent to which plaintiff's case depends on appropriate discovery against a foreign state. That's when, in determining whether they've satisfied their burden under 1608E. Take into account the extent to which the case depends on evidence that's within the, on discovery against a foreign, the foreign state. And that's what, that's what we have here. Is Hill the, do you have any other cases? I have, well, the, the, the courts all say, that discuss it, say that the standard under 1608E is the same for, for a default judgment against a foreign state, is the same as the standard under Rule 55, I believe it's now D, for a default judgment against the United States. And in the brief, we cited decisions from the Ninth and Second Circuit that both say that the standard is, is lower. Now, the Ninth Circuit says it a little bit more clearly. Well, but I, I was focusing not just on the fact that it's a default, that the defendant's not here, or the prospective defendant's not here, but that, again, looking back at the decisions of the Inter-American Court and the affidavits in this case, one of the characteristics of the North Korean government, according to the allegations, is that it, it uses its police powers to suppress any possible evidence of the behavior with inside the company, country. That, I, that's, I mean, you can have lots of countries that don't show up, that don't reflect those characteristics, but, you, you see my point? I don't. It's, North Korea, I mean, to allow the judgment to stand, that, that, that, that, that. I'm not suggesting that. Would reward North Korea for not appearing. Yeah, but my question is, I'm asking you whether there are, you mentioned Hill. I was just asking you whether there are other cases of the federal courts that reflect the reasoning of the Inter-American Court, which is to account for the fact that in a situation like this, with a country like North Korea, you can't get direct evidence of what happened to Reverend Kim once he was in the labor camp. It's not possible. Well, right. I mean, I don't, I don't think the cases go that far, and, and often they, they don't go that far. But I think Hill, Hill provides the, the ground. Oh, okay. I'm sorry? That's okay. Sorry. I didn't mean to interrupt you. I think Hill, Hill facilitates that. Hill, Hill says that you need to take this into account, that, that where the, and even under the federal rules of evidence, what is it, 804, 804 B6, talks about a defendant that, that controls the evidence and, or forced the witness not to create a situation where the witnesses are unavailable. Right? Do you prefer the approach that was followed in Kilburn? The, Kilburn is exactly, in terms of the, the, it's very similar to this case, right? Kilburn, you had expert testimony saying that he was tortured. You have, you have State Department reports, which we have here. We also have U.N. reports. You know, we have a tremendous amount of expert testimony, circumstantial evidence that, that, let me make one point because I see that I'm running out of time. But yes, I mean, Kilburn, I think, is very much on point here. Kilburn didn't address Price. But here what we have that, that makes this a stronger case than Kilburn, even though Kilburn. Isn't your argument on Price is that Price sent the case back with an opportunity to replead because the elements of defense were not really alleged? Yes. That's not the case here. The elements of defense are alleged. The question is, I think the district court is suggesting that it's circumstantial. We should really credit the experts because they're not telling who the lying ones are. Price is at a stage below where we are. I agree, right. Price is dealing with the pleading stage. But isn't Price different for another pretty fundamental reason, which is that in Price, Price was the victim, right? Right. Price was here. And he was here. Exactly. We don't have the victim here. We don't have the victim. This is his family. We don't have the victim here. They were able to go back and replead and fill in the gaps that were missing in the complaint if they were capable of doing that. Here what we have is extensive expert testimony saying that Price discusses the severity requirement and even gives examples of being hanged. Forget Price. What we're talking about is evidence satisfactory to the court. Price is just different because it's a failure of pleading the element. So we're talking about how do we construe evidence satisfactory to the court. Right. That's the decision that needs to be made. And I think that it needs to be, that Congress intended, clearly a very low standard. The Ninth Circuit in applying, again, Rule 55, which is the same standard, said it's, let me just get the right language here, some factual basis. Well, I don't know that it's low. Suppose you came in and said, you know, everyone knows how bad North Korea is. And the person on whose behalf we are here is not around anymore. And so we should be able to assume the worst. That wouldn't be enough. That would not be enough. That would not be enough. So we're not talking about a low standard. We're talking about a different standard. So it's pretty critical to your case that you have a decision of the South Korean court actually finding that he was, in fact, abducted. He was, in fact, abducted by a team that was put together. They went to great effort to capture him, to bring him over from China to North Korea. The South Korean judgment, I'm sorry, was based on testimony given by the defendant in that case, who was one of the people who abducted Reverend Kim. It was based on testimony of one of the co-conspirators. There's very solid evidence that he was, in fact, abducted, handed over to the North Korean secret police. The experts say that once he got to that point, as a Christian minister helping defectors from North Korea, he would have been subjected to worse treatment, much more brutal than a typical political prisoner in a North Korean prison camp. What do we do with the arbitration requirement? The arbitration requirement, I had that question as well. I spoke with trial counsel yesterday. He said that they were served with a complaint with an offer to engage in arbitration. I didn't see. Wait, who was served what? The plaintiffs below in the case served North Korea with an offer to arbitrate along with the complaint. Okay. Where is that in the record? I didn't see it, and that's why I asked, but it was, in fact, served. Did you do somewhere to be seen? He sent me an email with the letter attached. I thought we loved emails. Is there anything better? Well, so let me say this. If this case should have been dismissed, it should have been dismissed without prejudice. Is it in the district court record? I'm sorry? Is it in the district court record? I don't know. I didn't see it there. I don't know. You looked and it's not there, or you don't know? I didn't look through the entire record. Well, why don't you send it to the court within a couple days, like three, what you have about the offer, okay? Okay. Would that include if it was not before the district court? Just send it. We'll decide whether we'll rely on it. Just give us what you've got. And let me just request this. I think that if the court finds that somebody in our jurisdiction was lacking because of the lack of arbitration or anything else, this is at the pleading stage. And at that point, the allegations of the complaint should be taken as true. This is not summary judgment. We haven't even begun to engage in discovery. Do you allege in the complaint that the offer of arbitration was made? No. Okay. All right. Let me just ask you one other question. I realize it doesn't have anything to do with that, but the statute allows attachment of the country's assets during the pendency of the case. Does North Korea have any assets in the United States? I don't know. I don't know. I don't know of any, but that doesn't – I'm just curious. It allows attachment. It also – I mean, there are ways – I don't know. I don't know, but plaintiffs can be very aggressive in searching for assets and finding them where, you know, it may not be held in the name of North Korea, but they might be there. Might be somewhere else. Numbered bank accounts and things. Yes. Yes. But isn't your argument – doesn't your argument really boil down to not so much a quibble with the standard as far as quantum of evidence by the district court? It's that this evidence should have been good enough under any standard. I mean, you can establish that somebody has died under the common law once they've been gone for seven years. He's been gone more than seven years. You can establish that an organization acted accordingly to its routine practice by introducing evidence of what its routine practices are. You can have experts testify about, you know, causation based on, you know, circumstantial evidence and hearsay accounts and evidence of routine practices, et cetera. I mean, why doesn't this just really simply boil down to whether even if you use the federal rules of evidence, that evidence should have come in and all taken together, it should have been sufficient? I agree. I agree on that. I was going to say, like I said in the beginning, there are a number of bases for reversing the decision of the district court. One is the quantum. It applied the wrong standard, which constitutes an abuse of discretion. Once you get into measuring the evidence, it's not the same standard of review. But I agree that the measure of the evidence, that sufficient evidence under any standard was provided to the court. I'm just going to get the amicus here. You're done? I'm done. Okay, why don't we hear from the amicus? May it please the Court. The amicus human rights first has for many years championed the enforcement of humanitarian and international human rights law. One of the fundamental precepts of those bodies of law is the recognition that we need not merely to declare the existence of rights or recognize the existence of rights, but to make those rights enforceable. And that precept, I would submit, is especially at work in this case for a number of reasons. Number one, express congressional intent. When Congress amended the FSIA to provide the cause of action that is now before this Court, they were quite explicit that they intended to provide a cause of action to be used against what Congress called outlaw states. And they named the ones they had in mind, and North Korea was very prominently featured on that short list. These are states that traffic in terrorism, torture, and extrajudicial killing. And so it is somewhat ironic and very much out of step with the expressed intent of Congress that a state, or if a state like North Korea, could thwart the enforcement of human rights by simply not showing up and joining issue with the allegations and making disclosure if disclosure is necessary. And we're here today, Your Honors, because the result below creates a risk that these cases of enforced disappearance will result in a very different judicial outcome in this country as compared with the several international tribunals which we've brought to your attention, in which this fact pattern has been repeatedly addressed. Yeah, we get it, but don't waste your time on the background. Okay. We're trying to figure out satisfactory to the Court. That's it. Yes. That's, at least in my view, that's what at play here. So what does that mean? Satisfactory to the Court, I think the domestic cases say it's the same standard as the standard for default by the United States. I think the case that Mr. Perlin cited, the Ninth Circuit case, refers to some evidence to support the claim. And it's entirely possible, Your Honors, that... And you would say forcefully, including circumstantial. Absolutely. And actually, it's, you know, we do not proffer the international decisions with any kind of suggestion that this Court should be importing foreign law. What we're saying is that... We would never do that. Well, hope springs eternal, but I'm not asking for that today. These cases are illustrative of a common sense way of analyzing these cases, which is very comfortable and compatible with U.S. law for a number of reasons. Your point about these cases, I take it, is that they are responsive to the problem here, which is that the district court required direct evidence of what happened to Reverend Kim. And your point and the point of these decisions, I take it, is in a situation like North Korea, evidence like that's impossible, correct? It is impossible. That's what this all boils down to, doesn't it? That's correct. So I take it your theory is that if the evidence is sufficient to show that, A, Reverend Kim was, in fact, abducted, and that's there, right? And, B, that we've got all these affidavits that the North Korean government abducts people and people who are abducted are tortured and killed, right? That should be sufficient to the Court. That's sufficient under your theory, right? Exactly so. Because it's responsive to this unique problem of a defendant which controls all the evidence and because of its terrorist activities, it makes it quite unlikely that anybody would ever have direct evidence, right? Agreed. Okay. That's what the case is all about. And the only case, the only, and going back to the question I asked counsel for the Kims is, is there, you've given us these decisions of the international tribunals. Are there any federal court decisions that reflect that principle? I think the best case is the one that was already mentioned by Judge Edwards, Kilburn. Kilburn. Yeah, I think the facts there are closest. I just happened to have it open here. The Court said the precise circumstances of Kilburn's captivity are not known because of his subsequent murder. But Dr. Clausen, the expert, testified that he had no reason to believe that the circumstances of Kilburn's time as a hostage were any different from other captives of Hisbollah. Okay. Rule 406 of the Federal Rules of Evidence, which talks about pattern and practice, is another source of domestic law that I think makes it entirely possible to use the same analysis here. Okay, great. Thank you very much, both of you. The case is submitted.
judges: Tatel, Wilkins, Edwards